**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
IN RE: AMERICAN EXPRESS ANTI-STEERING                       :
RULES ANTITRUST LITIGATION                                  :        **No. 06-CV-2974-WHP**
                                                            :
**This Document Relates to:  All Actions**                  :
                                                            :
------------------------------------------------------------x

## JOINT RULE 26(f) REPORT AND PROPOSED SCHEDULING ORDERS

The parties, including interim lead counsel for the putative class ("Class Counsel") and

counsel for American Express Company and American Express Travel Related Services

Company, Inc. ("American Express"), having conferred among themselves, submit this Report

setting forth their respective positions with regard to the matters set forth in Fed. R. Civ. P. 26(f)

and related case management issues.

1.      **Initial Disclosures.**

The parties agree to make the disclosures provided for in Rule 26(a) on or before June 15,

2009.

2.      **Electronically Stored Information and Production Protocol.**

The parties are negotiating and expect to submit shortly for the Court's approval a

stipulation with respect to production of electronically stored information and other information

in this action.

3.      **Confidentiality Agreement.**

The parties have agreed upon a stipulation with respect to the confidential treatment of

information in this action.  This stipulation is submitted by the parties as Exhibit A, hereto, to be

"so ordered" by the Court.

4.      **Expert Discovery.**

The parties have agreed upon a stipulation with respect to the discovery of expert information in this action.  This stipulation is submitted by the parties as Exhibit B, hereto, to be "so ordered" by the Court.

5.      **Coordination With Individual Plaintiffs' Cases.**

The parties have materially divergent positions with respect to the manner in which the conduct of the instant litigation should be coordinated with certain substantially similar cases filed by individual merchant plaintiffs in the Eastern District of New York, including *Rite-Aid Corp. v. American Express*, 08-CV-2315 (E.D.N.Y.) (NG) and related cases (the "Individual Plaintiffs' Cases.")

A.      **Plaintiffs' Position on Coordination**

Class Plaintiffs agree to take reasonable steps to integrate their discovery efforts with those undertaken in the Individual Plaintiffs' Cases, as follows:

1.      *Depositions*:    Class Plaintiffs are willing to invite Individual Plaintiffs' counsel to attend and examine at depositions that are noticed in this action, so long as Class Plaintiffs receive reciprocal treatment for depositions noticed in the Individual Plaintiffs' Cases.  Further, Class Plaintiffs are willing to stipulate that, if Individual Plaintiffs notice a deposition and Class Plaintiffs are invited to participate, then Class Plaintiffs may not later notice a deposition of the same witness, absent a showing of "good cause."  This proposal will allow American Express to prepare its witnesses just one time, avoiding duplication of effort.

Class Plaintiffs propose to notice not more than 25 depositions of American Express witnesses, including substantive 30(b)(6) depositions, on the understanding that

we may seek leave of court for additional depositions on a showing of good cause.  For any deposition that we notice, we shall have seven hours of "on the record" time.  For depositions that we do not notice, but that Individual Plaintiffs do notice, we will have three hours of hours of "on the record" time.

      2.    *Document Discovery.*  Class Plaintiffs have spoken with Individual Plaintiffs and it appears that all plaintiffs are willing to propound a common "First Request for Production of Documents."  While we would reserve the right to propound additional follow-up requests, it is our expectation that these First Requests will account for the vast majority of all documents that we seek during the course of this litigation.

      We are amenable to the suggestion of having a unified meet and confer process with respect to the First Requests and any subsequent discovery demands jointly proffered by Class Plaintiffs and Individual Plaintiffs.  In addition, if the Court is agreeable, we would stipulate to allow a single Magistrate Judge (whether in the Eastern District of Southern District) resolve all discovery disputes.

      **B.**      **Defendants' Position on Coordination**

*1.*    *American Express's Proposed Coordination Protocol:*  In order to implement the kind of coordination, which as described by the Court during the March 6 conference, would "treat this . . . like an MDL", American Express proposes that the discovery with respect to the claims of the Class Plaintiffs (the "SDNY Actions") and the claims of the Individual Plaintiffs (the "EDNY Actions") be governed by a Discovery Coordination Protocol submitted by Defendants as Exhibit F, hereto.  A proposed Coordination Order reflecting American Express's coordination proposal is submitted by Defendants as Exhibit E, hereto.

American Express's Coordination Protocol is modeled on orders used in other multi-district litigations and other cases involving similar coordination issues.[1]  Under the Coordination Protocol, Court-ordered coordination of the SDNY and EDNY Actions would include:  (i) a limitation of one deposition, lasting no more than one day, of any witness in the EDNY or SDNY Actions (*i.e.,* "one bite at the apple"), absent consent or Court order (Ex. F, Defs. Discovery Coordination Protocol ¶D(2)); (ii) standards ensuring that questioning by plaintiffs' counsel for the Class and Individual Plaintiffs will be non-duplicative and limited to no more than seven hours "on the record" in a day, subject to further agreement among the parties or Court order (*id.* ¶¶8-12); (iii) protections so that all parties in the SDNY and EDNY Actions will, to the extent possible, only have to search for documents and answer other written discovery once (*id.* ¶¶B(1) – B(5) (party discovery), ¶¶C(1) – C(3) (third party discovery)); and (iv) guidelines to allow coordinated resolution of discovery disputes in the SDNY and EDNY Actions (*id.* ¶A(5)).

Like Class Plaintiffs, if the Court is agreeable, American Express would also stipulate to allow a single Magistrate Judge (whether in the Eastern District or Southern District) to resolve all discovery disputes in the SDNY and EDNY Actions.

Finally, American Express proposes that the SDNY and EDNY Actions should have common pre-trial schedules to keep discovery in both venues on the same track and maximize the opportunities for cooperation.  The schedule proposed by American Express in Section 7(B), below, would permit common pre-trial proceedings for the Class and Individual Plaintiffs'

---

[1] The specific precedents were:  *In re: Pineapple Antitrust Litigation*, No. 1:04-md-1628 (RMB) (S.D.N.Y.) (formal MDL coordination); *In re Qwest Communications Int'l Inc. Securities Litigation*, No. 01-RB-1451 (CBS) (D. Colo.) (federal-state coordination); *California State Teachers' Retirement System v. Qwest Communications Int'l Inc., et al.*, Misc. Action No. 415546 (RAK) (Cal. Super. Ct. – San Francisco Cty.) (state-state

claims. As discussed in greater detail below, this schedule is also independently justified even if no formal coordination occurs, simply because the nature of Class Plaintiffs' claims, including their efforts to represent a vast and diverse class pursuant to Rule 23, dictates discovery from merchants that are very different from the proposed class representatives and stand to suffer significant issues based on the theories of the Class Complaint.

2. *Justification for American Express's Proposal re: Coordination:*

The Class Plaintiffs (and Individual Plaintiffs) allege identical antitrust claims: both allege violations of Sections 1 and 2 of the Sherman Act based solely on the American Express Non-Discrimination Rules and nothing else; both allege that the relevant markets can be confined to American Express's own payment cards; and both seek relief based solely on the American Express Non-Discrimination Rules. (*See* Declaration of Eric Brenner, dated April 22, 2009 ("Brenner Decl.[2]") ¶¶7-8.) Coordination is thus necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve resources of the parties, their counsel and the judiciary, as has been well recognized in MDL proceedings. *See, e.g., In re Polychloroprene Rubber (CR) Antitrust Litigation*, 360 F. Supp. 2d 1348 (J.P.M.L. 2004); *In re Rubber Chemicals Antitrust Litigation*, 350 F. Supp. 2d 1366 (J.P.M.L. 2004); *In re Foundry Resins Antitrust Litigation*, 342 F. Supp.2d 1346 (J.P.M.L. 2004); *see also* 3/6/09 Tr. at 20 (recognizing that the Court "can treat this, in essence, like an MDL even though it is not an MDL").

---

coordination); *Conroy v. Fresh Del Monte Produce Inc., et al.*, No. RG 04146298 (RMS) (Cal. Super. Ct. – Alameda Cty.) (federal-state coordination).

[2] The Brenner Declaration provides certain factual information relating to the case management and scheduling issues raised by this submission, and is being filed by Defendants contemporaneously herewith.

Coordination is also appropriate here because party discovery from the Individual Plaintiffs will be essential third party discovery in the Class Plaintiffs' cases. The purported class representatives in this action are small merchants, like single facility restaurants, that purport to represent a class of more than 3 million merchants that includes companies in approximately sixty industry categories, including huge companies in entirely different lines of business. (*See* Brenner Decl. ¶6.) At present, for example, there are five Individual Plaintiffs whose claims against American Express are consolidated before Judge Gaurafis in the Eastern District of New York, with more individual plaintiffs poised to file suit in the event alternative dispute resolution fails. (*See* Brenner Decl. ¶9.) The Individual Plaintiffs are very large companies like CVS (America's largest pharmacy chain) that are emblematic of some (but not all) of the kinds of large companies that the Class Plaintiffs do not adequately represent. (*See* Brenner Decl. ¶7.) Documents and testimony from Individual Plaintiffs (currently five in number and potentially fifteen or more) will therefore be highly relevant evidence to Class Plaintiffs' claims, even if the Individual Plaintiffs' actions are dismissed as time barred.[3]

Plaintiffs' agreement in their proposal "to take reasonable steps to integrate their discovery efforts with those undertaken in the Individual Plaintiffs' Cases" does not amount to treating this case, "in essence, like an MDL even though it is not an MDL." (3/6/09 Tr. at 20.)

First, Class Plaintiffs' proposal to coordinate with the Individual Plaintiffs with respect to a common first document request leaves the Class and Individual Plaintiffs free to present American Express with multiple, successive, uncoordinated Rule 34 requests. The predictable

---

[3] American Express has requested a pre-motion conference in the EDNY Actions in order to file a Rule 12(c) motion seeking judgment in favor of American Express on all of the Individual Plaintiffs' claims based on the statute of limitations.

result will be to impose severe burdens on American Express personnel during a period of economic crisis.

Second, with respect to depositions, Class Plaintiffs propose to invite attendance by the Individual Plaintiffs provided there is reciprocity. This "invitation to attend" approach leaves Individual Plaintiffs free to ignore the invitation, not attend the deposition, attend but not ask questions at the deposition, or duplicate the deposition by covering the same subjects using the same amount of time. This "invitation"-based system unfairly shifts the burden of disagreements between plaintiffs' counsel about deposition timing to American Express, rather than requiring the Class Plaintiffs and the Individual Plaintiffs to coordinate "like an MDL".

Third, Class Plaintiffs' coordination proposal is also insufficient because it does not meaningfully require the Class Plaintiffs and the Individual Plaintiffs to coordinate regarding the number of depositions of American Express witnesses that they take. Plaintiffs have only agreed to limit themselves to 25 depositions of American Express witnesses exclusive of any depositions that the Individual Plaintiffs notice of American Express. Plaintiffs' proposal means American Express will have to sit for more (potentially far more) than 25 depositions.

Finally, Class Plaintiffs' proposal regarding restrictions on how much "on the record" time they will have for depositions does not account for how much time counsel for Class Plaintiffs and the Individual Plaintiffs will be permitted together on a *consolidated* basis. *See* Section 5(A)(1), above (proposing that Class Plaintiffs would be permitted seven hours of "on the record" time for any deposition plus three hours of "on the record" time for depositions that the Individual Plaintiffs notice). A consolidated limitation on deposition time is what matters to ensure that both groups of plaintiffs' counsel are appropriately cooperating and avoiding duplicative discovery. Also, Class Plaintiffs' proposal permits them to take three hours of "on

the record" deposition testimony for every deposition that the Individual Plaintiffs take, yet not count *any* of that time against their 25 deposition limit.  To the extent Class Plaintiffs are participating in depositions, it should "count" against the total time allotted to them and the Individual Plaintiffs collectively.  (*See* Ex. F, Discovery Coordination Protocol ¶D(9) (limiting both plaintiff groups to no more than seven hours "on the record" in a day, subject to further agreement among the parties or Court order).)

* * *

Negotiations regarding coordination are presently underway with counsel for the Individual Plaintiffs.[4]  Like here, in those negotiations, American Express's position is that the parties should abide by the proposed Discovery Coordination Protocol.[5]  This Court clearly has the authority to enter orders jointly with, and take other procedural steps in coordination with, the Eastern District of New York to achieve appropriate coordination.  *See* Manual for Complex Litigation (Fourth) § 20.14 (2004) (suggesting joint conferences, joint orders, and other techniques to coordinate discovery in different venues).  Absent the entry of an order requiring coordination in this Action, as well as in the Individual Plaintiffs' cases, American Express will be exposed to multiple, duplicative discovery demands and conflicting schedules.

---

[4] In addition, a case management conference in the EDNY Actions is expected to occur with Magistrate Judge Reyes in the first week of May, assuming that Court is then available.

[5] *See generally In re Sicilia Di R. Biebow & Co. Contract Litig.*, 490 F. Supp. 513, 515-16 (J.P.M.L. 1980) (denying transfer under MDL procedures, but finding the possibility of duplicative discovery could be minimized because "any party could seek orders from the appropriate district courts directing the parties to coordinate any pretrial efforts germane to both actions"); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying transfer under MDL procedures, but finding the possibility of duplicative discovery could be minimized because "any party could seek orders from the three courts [where the actions are pending] directing the parties to coordinate their pretrial efforts").

6.     **Limitations on Discovery.**

The parties' positions regarding the "changes [that] should be made in the limitations on discovery imposed" in this case pursuant to Rule 26(f)(3)(E), are as follows:

A.     **Plaintiffs' Position on Rule 26(f)(3)(E) Alterations**

1.     *Depositions*:   The limitations on the number of depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(1) shall be expanded to allow plaintiffs to take 25 depositions of American Express witnesses without further leave of Court, exclusive of depositions that are noticed in the Individual Plaintiffs' Cases.  The presumptive 7-hour limitations of Rule 30(d)(1) shall apply to all depositions noticed by Class Plaintiffs.  In addition, Class Plaintiffs shall be permitted to question witnesses for 3 hours of "on the record" time at depositions noticed solely by Individual Plaintiffs.  There shall be no fixed limit upon the number of third party depositions.

2.     *Interrogatories*:  We would propose that the limitations set forth in Fed. R. Civ. P. 33(a)(1) upon the number of interrogatories shall not apply, so long as all interrogatories are in compliance with Local Civil Rule 33.3.

**B.**     **Defendants' Position on Rule 26(f)(3)(E) Alterations**

1.     *Depositions:*   American Express proposes that depositions of each named Party in the SDNY Actions and the EDNY Actions shall be limited to 25, without further leave of Court, inclusive of depositions that are noticed by the Individual Plaintiffs.  The length of depositions and the allocation of time at depositions among Class Plaintiffs and Individual Plaintiffs shall be governed by the terms of the Coordination Protocol, which limits any deposition to no more than seven hours "on the record" in a day, subject to further agreement among the parties or Court order.  (*See* Ex. F, Discovery Coordination Protocol ¶D(9).)

American Express agrees that there should be no fixed limit upon the number of third party depositions.

2.     *Interrogatories.*  American Express proposes a limit of 50 non-contention interrogatories served on any party (with the limit on total interrogatories served to American Express governing the Class Plaintiffs and the Individual Plaintiffs collectively).

3.     *Justification for American Express Position re: Rule 26(f)(3)(E) Alterations*:  With respect to depositions, American Express witnesses have already been deposed numerous times in prior litigations which should allow the Class Plaintiffs and Individual Plaintiffs collectively to narrow and focus their list of American Express deponents.  The Class Plaintiffs acknowledge that 25 depositions of American Express should be sufficient.  Their proposal does not affect the ability of the Individual Plaintiffs to take additional depositions of American Express witnesses that the Individual Plaintiffs then could use in this

action.  Given that the Individual Plaintiffs' allegations against American Express are substantively identical to those of the Class Plaintiffs, there is no reason why all plaintiffs in both courts cannot abide by a common 25 deposition limit, and cooperate so that they do not ask duplicative questions or exceed the presumptive seven hour "on the record" limit.  (*See* Ex. F, Discovery Coordination Protocol ¶D(9).)

With respect to interrogatories, under Federal Rule of Civil Procedure 33(a)(1) there is a presumptive limit of 25 interrogatories.  Under the Local Civil Rules, non-contention interrogatories generally serve only limited purposes.  *See* Local Civil Rule 33.3.  While some departure from the presumptive limits in the Federal Rules is reasonable in this case, there is no justification for Plaintiffs' proposal that they can serve as many interrogatories as they want, with no limitations whatsoever.  Fifty non-contention interrogatories (including subparts) should be sufficient to obtain the basic information for which such interrogatories are designed, such as the identification of persons, dates, and so on.

A proposed Case Management Order reflecting American Express's position regarding Rule 26(f)(3)(E) alterations is submitted as Exhibit D, hereto.

**7.    Schedule:**

The parties have divergent positions on an appropriate schedule governing discovery and other pre-trial matters.

**A.    PLAINTIFF'S PROPOSED SCHEDULE:**

| May 1, 2009 | As of this date, the parties may propound initial discovery (including without limitation document |
|---|---|

| | |
|---|---|
| | requests, interrogatories, deposition notices and third party subpoenas) in conformity with the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. |
| October 1, 2009 | Last day to join other parties or amend pleadings. Any application to amend pleadings or add parties after this date shall be supported by a showing of good cause under Rule 16(b)(4). |
| October 15, 2009 | Last day for production of privilege log in response to all document requests served on or before May 15, 2009. |
| January 15, 2010 | Last day to move for class certification.  Plaintiffs may move at any prior time. Once Plaintiffs file a class certification motion, then the parties shall submit to the Court a deposition and briefing schedule consistent with following:<br>1.  Amex shall depose plaintiffs' class expert(s) within 30 days;<br>2.  Amex shall then file opposition papers within 20 days thereafter;<br>3.  Plaintiffs shall then depose Amex's expert(s) within 20 days thereafter;<br>4.  Plaintiffs shall file reply papers within 20 days thereafter.<br>5.  Oral argument or hearing to be scheduled by the Court |
| June 15, 2010 | Fact Discovery closes |
| July 30, 2010 | Plaintiffs' expert reports on the merits under Rule 26(a)(2) shall be served on or before this date.<br>• Plaintiffs shall make their expert(s) available for one day of deposition at Amex's request following the report |
| September 30, 2010 | Amex's merits expert reports shall be served on or before this date.<br>• Amex shall make its expert(s) available for one day of deposition at Plaintiffs' request following the report |
| November 15, 2010 | Plaintiffs' reply expert reports (if any) shall be served on or before this date. |

| December 15, 2010 | Summary judgment moving papers due<br>• In the event there is no dispositive motion filed, the parties shall confer and attempt to present the Court with a revised Case Management Order |
| January 31, 2011 | Summary Judgment opposition papers due |
| February 28, 2011 | Summary judgment reply papers due |
| To be scheduled by the Court | Oral argument on dispositive motions |
| To be scheduled by the Court | Parties to submit a Joint Pretrial Order |
| To be scheduled by the Court | Trial |

Plaintiffs' proposed schedule is more than ample to accommodate discovery in this action.

First, the document discovery sought by Plaintiffs here will be extremely limited (in sharp contrast to the other litigations in the payments industry that defendants reference, where millions of pages of documents have been produced). Here, Plaintiffs' requests will consist almost entirely of document requests that have already been proffered to American Express in other litigations and proceedings, including: (i) documents already produced in *Marcus v. American Express*; (ii) documents already produced by Amex pursuant to subpoena in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 05-MD-1720 (JG) (JO) (E.D.N.Y.), along with certain documents that were requested there but not produced; and (iii) documents sought in a Civil Investigative Demand served upon Amex related to its anti-steering rules by the Department of Justice in 2008.

Second, in terms of depositions, the proposed schedule easily accommodates any desire by American Express to take depositions of merchants. To the extent that depositions of absent

third party class members are allowed to proceed, Amex can surely take all such depositions within the course of the next year.  Likewise, the depositions sought by Plaintiffs can easily be completed within the time allotted here.

A proposed Case Management Order reflecting Class Plaintiffs' proposed schedule is submitted as Exhibit C, hereto.

### B.   DEFENDANTS' PROPOSED SCHEDULE TO APPLY TO CLASS PLAINTIFFS AND INDIVIDUAL PLANTIFFS.

Defendants propose the schedule below which is structured to achieve two objectives.  First, the proposed schedule is necessary to allow American Express sufficient time to obtain discovery not only of the putative class representatives in the SDNY Actions, but also of the Individual Plaintiffs in the EDNY Actions and other third parties in the SDNY Actions, in order to draw an accurate picture of how the Non-Discrimination Rules facilitate competition.  Second, the proposed schedule is intended to maximize opportunities for legitimate coordination—whether formal or informal—by setting realistic deadlines that will put American Express on even and fair footing in defending the Class Plaintiffs' claims in the SDNY Actions and the Individual Plaintiffs' claims in the EDNY Actions.  Given these twin objectives, American Express's proposed schedule is appropriate regardless of whether there is formal coordination of the SDNY and EDNY Actions.

A proposed Case Management Order reflecting American Express's proposed schedule is submitted as Exhibit D, hereto.

| Date | Event |
|---|---|
| **I. Fact Discovery** | |
| 5/1/09* | Fact discovery begins (to include third-party discovery) |
| 6/15/09* | FCRP 26(a)(1) initial disclosures due |
| 10/1/09* | Last day to join other parties or amend pleadings. Any application to amend pleadings or add parties after this date shall be supported by a showing of good cause under Rule 16(b)(4) |
| 3/1/10 | Deadline for completion of party document productions |
| 9/1/11 | Fact discovery closes |
| **II. Expert Discovery and Briefing** | |
| 12/1/11 | Plaintiffs' expert reports(s) due |
| 3/1/12 | Defendants' expert report(s) due |
| 5/2/12 | Plaintiffs' rebuttal expert report(s), if any, due |
| 8/1/12 | Deadline for completion of expert depositions |
| **III. Class Certification/Dispositive Motions** | |
| 10/3/12 | Class certification and/or dispositive motions due |
| 11/17/12 | Responses to class certification and/or dispositive motions due |
| 12/18/12 | Replies in support of class certification and/or dispositive motions due |
| To be scheduled by the Court | Oral argument on dispositive motions |

---

\*     Dates on which the Class Plaintiffs and Defendants agree.

| IV. Pretrial Order and Trial | |
| --- | --- |
| To be scheduled by the Court | Parties to submit a Joint Pretrial Order |
| To be scheduled by the Court | Trial |

1.      *Justification for American Express Position re: length of schedule:* The Class and Individual Plaintiffs seek to dismantle long-standing non-discrimination rule provisions that preserve the ability of American Express to compete effectively against Visa and MasterCard, the dominant credit card associations.  The Class Plaintiffs' claims are purportedly brought on behalf of over 3 million merchants that have accepted American Express-branded payment cards. The putative class includes a substantial number of merchants—representing a majority of charge volume—that have individually negotiated contracts with customized language.  (Brenner Decl. ¶6.)  The putative class would include merchants in approximately sixty vastly different industry categories ranging from huge companies like Disney, Wal*Mart, and Delta Airlines to mom-and-pop stores.  (Brenner Decl. ¶6.)  Included in these categories are the Individual Plaintiffs, very large companies that make the same allegations as the purported class plaintiffs but have chosen to proceed individually through separate counsel.  (Brenner Decl. ¶¶7-8.)  In addition to the five merchant cases currently pending in the Eastern District, there may be ten or more additional individual litigations brought by merchants that have chosen to proceed separately from the SDNY Actions.  (Brenner Decl. ¶9.)  These individual plaintiffs will all be relevant third parties in the SDNY Actions.

A reasonable amount of time for the fact discovery necessary to develop a record on these issues is 28 months.  Defendants' proposed schedule is consistent with the experience in *Marcus v. American Express Co.*, 04 Civ. 5432 (GBD) (S.D.N.Y.), where fact discovery lasted 27 months even though *Marcus* involved a single, albeit different, provision in American

Express merchant contracts.  (Brenner Decl. ¶12.)  It is also consistent with the experience in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 05-MD-1720 (JG) (JO) (E.D.N.Y.), which took more than 30 months for fact discovery[6].  (Brenner Decl. ¶15.) It is also consistent with the experience in *American Express v. Visa U.S.A. Inc., et al.,* 04-CV-08967 (BSJ) (S.D.N.Y.), where fact discovery lasted more than 16 months even though it focused almost exclusively on damages (given that liability had been effectively resolved in prior litigation brought by the Department of Justice).  (Brenner Decl. ¶19.)

Given the complexities in this case and looking to the experience of other complex cases such as those mentioned above, fact discovery cannot realistically be completed in the thirteen months that Plaintiffs propose.  First, it is impossible to coordinate discovery with the Individual Plaintiffs claims' in that period of time, and there would be gross inefficiencies in proceeding with discovery without those plaintiffs (including potential future individual plaintiffs in the Eastern District of New York) fully integrated in the discovery process.

Second, even if Class Plaintiffs intend to rely on discovery they (or at least their counsel) have taken in other cases involving the credit card industry, substantial new discovery will still be needed in these Actions, given the limits on the discovery in those other matters which focused on different issues and/or different defendants.  Notably, the Class Plaintiffs (and the Individual Plaintiffs) have not committed to limiting the document discovery they seek in any way.  Moreover, however much Class Plaintiffs may choose for tactical or other reasons to limit the discovery they propound to American Express, such discovery is unlikely to be sufficient for

---

[6] In *MDL 1720,* third-party depositions and inquiries regarding third party productions continue even now after the fact discovery cut-off and almost 3 years after fact discovery began.  (Brenner Decl. ¶15.)

the Individual Plaintiffs.  Moreover, such discovery will not be close to sufficient to address the American Express defenses for the reasons set forth below.

Finally, sufficient time is required to permit American Express to take the significant discovery it needs to defend contractual provisions that are essential to American Express's competitive viability.  American Express has contracts with merchants in approximately sixty different industry categories.  (Brenner Decl. ¶6.)  Even combining the putative class representatives and the up to 15 Individual Plaintiffs would not adequately cover these categories with respect to class certification and merits issues.  Evidence from this broad group is necessary to demonstrate the vastly different economic circumstances across merchants that pay different discount rates, receive vastly different benefits from American Express, and would face materially adverse consequences if the anti-steering rules did not exist.

These kinds of issues require discovery not only from the Individual Plaintiffs, the putative Class Plaintiffs, and third party merchants, but also from other third parties like (i) the competitive card networks (Visa, MasterCard, and Discover), and (ii) bank and store card issuers.  For example, this firm was counsel to American Express in *American Express v. Visa U.S.A. Inc., et al.* (04-CV-08967 (BSJ)) (the "*Exclusionary Rules Case*"), which involved an antitrust challenge to Visa and MasterCard's by-laws and policies excluding American Express from offering network services to bank issuers.  Seventy third party depositions occurred in that case—largely initiated by the defendants—even though liability had been effectively resolved in prior litigation brought by the Department of Justice.  (Brenner Decl. ¶20.)

American Express's schedules provides for 11 months for expert reports and expert depositions after fact discovery is complete and for 4 ½ months for briefing of class certification and dispositive motions after expert depositions are complete.  This compares with 6 months for

expert reports and depositions and 3 ½ months for dispositive motions in Class Plaintiffs' proposal. American Express believes that its proposed schedule for these matters more realistically reflects the complexity and enormous significance of the issues in the case and minimizes the chance that the parties would need to ask for extensions of time at a later date.

2.      *Justification for American Express Position re: class certification briefing*: American Express proposes that briefing on Plaintiffs' class certification motion proceed after fact discovery closes and at the same time as dispositive motions. Plaintiffs' proposal to brief class certification in the middle of fact discovery is unduly burdensome, inefficient, and prejudicial.

Under current case law, the record for class certification should be substantially developed before the Court can rule. Certification is only permitted if the court is satisfied after a rigorous analysis, that all prerequisites of Rule 23(a) are met. *Miles v. Merrill Lynch & Co., Inc. (In re Public Offering Secs. Litig.*), 471 F.3d 24, 33, 40 (2d Cir. 2006). "Some showing" by plaintiffs is not enough; rather plaintiffs must establish, by a preponderance of the evidence, that each requirement for class certification is met. *Teamsters Local 445 Freight Div. v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Indeed, the District Court must assess all of the relevant fact and expert evidence, including by, where appropriate, resolving issues going to the merits of the claims to the extent they are relevant to the Rule 23 issues. *Id.* at 202.

Under these standards, it is appropriate, particularly in a complicated case, to consider class certification after all of the fact and expert discovery is complete. Briefing class certification after fact discovery avoids supplemental submissions on class certification as the fact discovery record develops. It also avoids prejudice to the defendants, where as here merits, relief (including damages and causation), and class issues involve overlapping document and

19

deposition discovery from a large number of third party sources.  Plaintiffs' proposal would not

only prevent American Express from completing discovery before class certification briefing

occurred, it would do so without any benefit to efficient and fair judicial administration.

      3.    *Justification for American Express Position re: proposed deadline for privilege*

*logs*:  Class Plaintiffs propose a deadline of October 15, 2009, for American Express to provide a

privilege log in response to any document requests served prior to May 15, 2009.  This deadline

is unreasonable because it does not account for the practical realities of having to create such a

log.  Depending on the scope of the requests, it could take all or a substantial portion of the five

month period simply to identify, collect, review, and produce all responsive unprivileged

documents on a rolling basis while segregating the potentially privileged documents for further

review, logging, or production if warranted upon further review.  As an alternative protocol for

privilege logs, American Express proposes that, absent good cause, the parties must provide a

privilege log within 30 days after all documents have been produced with respect to any

document request.

    **8.**    **Periodic Status Conferences**

    **A.**    **Plaintiffs' Position**

      Plaintiffs  would propose that the Court, or a U.S. Magistrate Judge, hold periodic

status conferences, approximately every six weeks, during the pendency of this Action.

The parties shall file a joint report preceding each such conference detailing the progress

of the case and identifying matters that require, or may soon require, resolution by the

Court.

B.    **Defendants' Position**

American Express agrees that regular status conferences are appropriate but believes a schedule of every six weeks is more frequent than is required.

Dated: New York, New York

April 22, 2009


FRIEDMAN LAW GROUP  LLP                BOIES, SCHILLER & FLEXNER LLP


\_\_\_/s/ Gary B. Friedman_____        \_\_\_/s/ Donald L Flexner_____
Gary B. Friedman (GF 2597)             Donald L. Flexner (DF 4812)
Tracey Kitzman (TK 5869)               Philip C. Korologos (PK 3299)
Dean M. Solomon (DS 3699)              Eric Brenner (EB 2177)
270 Lafayette Street                   Damien Marshall (DM 2673)
14th Floor                             Alanna Rutherford (AR 0497)
New York, New York 10012               575 Lexington Avenue
(212) 680-5150                         New York, NY 10022
                                       (212) 446-2300


Attorneys for Plaintiffs               Attorneys for Defendants

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                      :

IN RE: AMERICAN EXPRESS ANTI-STEERING     :
RULES ANTITRUST LITIGATION              :       **No. 06-CV-2974-WHP**

This Document Relates to:  All Actions    :
                                        :
-------------------------------------------------------------x

## PROTECTIVE ORDER

In order to protect confidential business and trade secret information consistent with the

public's right of access to the Court's records and processes, the Court hereby enters the

following Protective Order pursuant to Fed. R. Civ. P. 26(c)(7):

**I.**     **Materials Which May Be Designated Confidential or Highly Confidential**

1.     Any documents, data, answers to interrogatories, responses to requests for

admission, deposition testimony, deposition transcripts and exhibits, other responses to requests

for information and/or other written information, produced in response to discovery requests in

this litigation, including any such material initially produced in any other litigation (hereinafter,

collectively, "Discovery Material"), may be designated by a producing party or non-party as

"Confidential" or "Highly Confidential" under this Protective Order.

2.     "Confidential Information" shall include any Discovery Material which the

producing party or non-party reasonably believes not to be in the public domain and contains any

trade secret or other confidential, strategic, research, development, or commercial information.

To facilitate discovery, unless stated otherwise by the producing party or non-party, all

Discovery Material produced by each party or non-party in the course of the litigation –

including deposition testimony and responses to interrogatories or requests for admission – shall

presumptively be considered and treated as Confidential Information under the terms of this

Order.

      3.     "Highly Confidential Information" shall include any Confidential Information

which the producing party or non-party reasonably believes to be so competitively sensitive that

it is entitled to extraordinary protections.

      4.     Any copies or reproductions, excerpts, summaries or other documents or media

that paraphrase, excerpt, contain or otherwise reveal the substance of (other than in general

terms) Confidential Information or Highly Confidential Information shall also be treated as

Confidential Information or Highly Confidential Information pursuant to this Order.

    **II.**    **Designation of Discovery Materials as Confidential or Highly Confidential**

      5.     In addition to the presumptive designation set forth above in paragraph 2, any

documents, material or information produced in discovery in this action that are to be designated

"Confidential" or "Highly Confidential" may be so designated by the producing party or non-

party by: (a) furnishing a separate written notice to counsel for the party receiving such

documents, material or information at the time of their production or as soon thereafter as

practicable specifically identifying the documents or materials as "Confidential," or "Highly

Confidential" and promptly thereafter providing  copies (bearing the same bates numbers as the

original copies) of any such documents bearing such designation(s); or (b) providing copies of

the documents, material or information so designated that are stamped with the legend

"CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL –

SUBJECT TO PROTECTIVE ORDER."  Discovery Material stamped or designated

"CONFIDENTIAL – SUBJECT TO PROTECT1VE ORDER" or "HIGHLY CONFIDENTIAL

– SUBJECT TO PROTECTIVE ORDER," including those produced, stamped or designated in

prior litigation and made available in this action, shall be treated as Confidential or Highly
Confidential, respectively, for the purposes of this Order.

6.      If Confidential Information or Highly Confidential Information is disclosed to any
person other than in the manner authorized by this Order, the party responsible for the disclosure
shall, immediately upon learning of such disclosure, inform the producing party or non-party of
all pertinent facts relating to such disclosure and shall make every effort to retrieve the
designated material and to prevent the occurrence of any further disclosure unauthorized by this
Order.

7.      Inadvertent production of or failure to designate any information as Confidential
or Highly Confidential shall not be deemed a waiver of the producing party's or non-party's
claim of confidentiality as to such information, and the producing party or non-party may
thereafter designate such information as Confidential or Highly Confidential as appropriate.  At
such time, arrangements shall be made for the return to the producing party or non-party of all
copies of the inadvertently misdesignated document(s) and for the substitution, where
appropriate, of properly labeled copies of such documents.  All previously-produced copies of
such documents that were inadvertently misdesignated shall be destroyed by the receiving party
or parties upon receipt of replacement copies of such documents with the proper designation.

8.      Inadvertent production of any document in this litigation in response to discovery
requests, subpoenas, or any agreement by any party or non-party, that a party or non-party later
claims should have been withheld on grounds of a privilege, including the work product doctrine
(collectively referred to hereinafter as an "Inadvertently Produced Privileged Document"), will
not be deemed to waive any privilege or work product protection. A party or non-party may
request the return of any document that it inadvertently produced by identifying the Inadvertently

Produced Privileged Document and stating the basis for withholding such document from production. If a party or non-party requests the return, pursuant to this paragraph, of such an Inadvertently Produced Privileged Document then in the custody of one or more parties, the possessing parties shall, within five business days, destroy or return to the requesting party or non-party the Inadvertently Produced Privileged Document and all copies thereof and shall expunge from any other document or material any information solely derived from the Inadvertently Produced Privileged Document, provided, however, that the receiving party may retain one copy of such Inadvertently Produced Privileged Document for the sole purpose of challenging the assertion of privilege by the producing party, in which case: (a) the receiving party shall notify the producing party in writing of its intention to retain a copy for such purpose within five business days of the receipt of the notice demanding return of such Inadvertently Produced Privileged Document, and (b) either party may thereafter seek a ruling from the Court with respect to the issue of whether the Inadvertently Produced Privileged Document is indeed privileged, whether by way of a motion to compel, motion for a protective order, or otherwise. All such motions shall be submitted in camera.  Absent an order from the Court, no Inadvertently Produced Privileged Document shall be used for any purpose other than for challenging an assertion of privilege in accordance with the terms of this Paragraph.  No party may assert as a ground for challenging privilege the mere fact of the inadvertent production.  Nothing in this Order shall preclude a party from arguing based on the underlying facts and circumstances that the production of the allegedly inadvertently produced document was not inadvertent or that conduct since production of the allegedly inadvertently produced document constitutes a waiver, except that, to the extent previously-produced documents were inadvertently produced and

retracted in any prior litigation, the inadvertent reproduction of such documents in this case shall not be deemed a waiver of privilege.

9.      The parties shall serve a copy of this Order simultaneously with any discovery request made to or subpoena served on any non-party in this action.

10.      Deposition testimony and the transcripts and video recordings thereof obtained during pretrial discovery shall be treated as Highly Confidential for a period of 40 days or for as many days as the parties shall agree, after receipt of such deposition transcript and/or video recordings to allow time for the deponent or counsel for that deponent, or any party or counsel to any party, to notify all parties of any Highly Confidential Information contained therein. Such Highly Confidential Information shall be designated by page and line number, and video cassettes, DVDs or other storage media shall be labeled in accordance with the provisions of this Order. The remainder of the transcript not designated to contain Highly Confidential Information shall be deemed to contain Confidential Information, unless and until any portion of the testimony is de-designated by the Court or by consent of the deponent or counsel for that deponent.  The court reporter shall include on the cover page of each volume of each deposition a clear indication that the deposition contains Highly Confidential Information.  Any document designated as Confidential or Highly Confidential that is marked as an exhibit in any deposition shall be treated according to the designation of that document prior to the deposition.

### III.      Permissible Uses of Discovery Material

11.      All persons obtaining access to Discovery Material produced in connection with this action shall use such Discovery Material only for the purpose of this litigation and not for any other purpose. Any person found to have made an impermissible use of any Discovery Material will be subject to, without limitation, appropriate civil penalties including for contempt

of court. Nothing in this Order shall limit or restrict a party's rights, if any, to use its own

Discovery Material or any information obtained independent of discovery in this action in any

manner that the party deems appropriate.

      12.    Nothing herein shall impose any restrictions on the use or disclosure by a party or

witness of documents, material or information obtained by such party or witness independently

of the discovery proceedings in this action, whether or not such documents, material or

information are also obtained through discovery proceedings in this action.  In addition, nothing

herein shall alter or affect any restriction on the use or disclosure by a party or witness of

documents, material or information obtained by such party or witness subject to any order of any

other court in any other proceeding or subject to any contractual, statutory or other obligation.

      13.    Confidential Information may be disclosed only to the following persons:

      (a)    The Court;

      (b)    Outside counsel for any party, including associated personnel necessary to

assist outside counsel in the action, such as litigation assistants, paralegals, and secretarial

or other clerical personnel;

      (c)    Consultants, experts or litigation support services, including outside

copying services, court reporters, or companies engaged in the business of supporting

computerized or electronic litigation discovery or trial preparation, retained by a party for

the purpose of assisting that party in this action, provided that they are not presently, and

have no present plans to become, an employee or consultant (except herein) of any other

party or potential party (including any putative class member) to this action.  Further, in

the event a party wishes to disclose Confidential Information to a consultant or expert

that is employed by, a consultant (except herein) of, or who has a present plan to become

an employee or consultant of, any participant in the payment services industry (excluding economists whose primary role in the industry is testifying or consulting in legal and regulatory proceedings) (an "Industry Participant"), then such party (the "Notifying Party") shall notify the party that produced such Confidential Information (the "Producing Party"), and provide five business days written notice during which the Producing Party may seek an Order from the Court precluding such disclosure.  The Notifying Party shall not disclose any such Confidential Information to an Industry Participant absent either a ruling from the Court rejecting the challenge of a Producing Party or the passage of five business days without a written objection from the Producing Party;

   (d) Associated personnel of any person within categories (a) through (c) for whom access to Confidential Information is necessary to assist such persons in the action, including any Court personnel assisting the Court, secretarial or other clerical personnel, stenographers or other persons involved in taking or transcribing or videotaping of testimony in this action, and principals and employees of the firm with which any consultant or expert as defined in paragraph (c) is associated;

   (e) Any other person as to whom the party or non-party producing the Confidential Information has consented to disclosure in advance and in writing, on notice to each party hereto; and

   (f) In-house counsel, legal assistants, and other legal staff for each of the parties.

14. Highly Confidential Information may be disclosed only to any persons falling within categories (a) through (e) in paragraph 13 above.

15.     Notwithstanding the provisions in paragraphs 13 and 14 above, Confidential and Highly Confidential Information may be disclosed, at deposition or otherwise, to any employee of the party or non-party producing such information.  Provided, however, that counsel for the Plaintiffs shall confer with counsel for American Express regarding any limitations on the nature or types of American Express documents that may not be shown to American Express employees working in certain departments or divisions of American Express.

16.     Counsel for a party may disclose Confidential or Highly Confidential Information to any actual or potential witness provided counsel has obtained prior written consent of counsel for the party or non-party who produced such information. Such consent shall not be unreasonably withheld.  Consent need not be obtained if (i) the person is an author or recipient of the Confidential or Highly Confidential Information; or (ii) the person is a former employee of the producing party or non-party and is known to have prior knowledge of the specific document containing the Confidential or Highly Confidential Information to be disclosed; or (iii) the person is a former employee of the producing party or non-party and is reasonably likely to have had prior knowledge of the subject matter referenced in the Confidential or Highly Confidential Information to be disclosed. Information may not be disclosed under clause (iii) if the person is a current employee or consultant (excluding those retained exclusively for the purposes of this litigation and covered by Paragraph 13(c)) or reasonably expected to be a future employee or consultant (excluding those retained exclusively for the purposes of this litigation and covered by Paragraph 13(c)) of any other named party to this action or any competitor of any party to this action.

17.     Persons described in paragraph 13(b) (and their associated personnel) shall be deemed bound by the terms of this Order upon its entry by the Court. A party disclosing

Confidential Information or Highly Confidential Information to a person described in paragraph 13(c) (and associated personnel) or any person described in paragraph 16 must first: (i) advise the recipient that the information is Confidential or Highly Confidential Information and may only be used in connection with this or related litigation; (ii) provide the recipient with a copy of this Order; and (iii) have that person execute a confidentiality agreement stating the following:

> "I, [name, position of employment], hereby acknowledge and agree that I am about to receive confidential information. I certify my understanding that such information is to be provided to me pursuant to the terms and restrictions of the Protective Order of [date entered] in [this action] (the "Order"). I have been given a copy of and have read this Order and agree to be bound by its terms."

### IV.   <u>Challenges to Confidential or Highly Confidential Designations</u>

18.    If any party disagrees with the designation by the producing party or non-party of any Discovery Material as Confidential or Highly Confidential Information, then the parties to the dispute, after providing notice to all parties in this action, will attempt first to resolve the dispute on an informal basis before presenting the dispute to the Court. All items objected to shall continue to be treated as Confidential or Highly Confidential pending resolution of the parties' dispute. If the dispute can be resolved, all parties shall promptly be informed of the resolution. If the dispute cannot be resolved informally, the producing party or non-party bears the burden of persuading the Court that the information is in fact Confidential or Highly Confidential within the definition(s) of those term(s) set forth above.

19.    Entering into, agreeing to, and/or complying with the terms of this Order shall not: (a) operate as an admission by any party that any particular documents, material or information contain or reflect trade secrets or any other type of confidential, proprietary or commercially-sensitive information; or (b) prejudice in any way the right of a party at any time to: (i) seek a determination by the Court of whether any particular document, item of material or

piece of information should be subject to the terms of this Order; (ii) seek relief on appropriate

notice from any provision(s) of this Order, either generally or as to any particular document, item

of material, or piece of information; (iii) object to any discovery request, including the right to

assert that no discovery should be had of or relating to certain documents or information; (iv)

seek a higher level of protection than provided for by this Order if the party believes that

circumstances warrant that higher level of protection; or (v) seek documents or other information

from any source.  In any instance where a producing party or non-party asserts a higher level of

protection to Discovery Material after its initial production, the higher protection level shall

apply to the materials only as of the time of their redesignation.  Persons who obtain access to

such materials prior to their redesignation shall, from the time of notice to them of the materials'

redesignation, restrict their review or use of those materials in accordance with the higher

protection level.

### V.      Deposition Procedures

20.      At any deposition, when counsel for a party or the deponent deems that the

answer to a question will result in the disclosure of Confidential or Highly Confidential

Information, counsel shall have the option, in lieu of taking other steps available under the

Federal Rules of Civil Procedure, to request that all persons other than the reporter, counsel and

individuals specified in paragraphs 13 and 14 hereof who have access to the appropriate category

of information, leave the deposition room during the Confidential or Highly Confidential portion

of the deposition. The failure of such other persons to comply with such requests shall constitute

substantial justification for counsel to advise the witness that he or she need not answer the

question pending.

21.     Any deposition testimony concerning a Confidential or Highly Confidential document produced by a non-party will be marked by the court reporter or videographer as Confidential or Highly Confidential on the deposition transcript or videotape.

## VI.     Efforts by Non-Parties to Obtain Confidential Information

22.     If any party has obtained Confidential or Highly Confidential Information under the terms of this Order and receives a subpoena or other compulsory process commanding the production of such Confidential or Highly Confidential Information, such party shall notify the producing party or non-party no later than seven days following receipt of the subpoena (but in no event later than seven days prior to the date set in the subpoena for the production of such subpoenaed information), including in such notice the date set in any subpoena or other compulsory process for the production of such subpoenaed information and a copy of the subpoena. The subpoenaed party shall not produce any Confidential or Highly Confidential Information in response to such subpoena or other compulsory process without the prior written consent of the producing party or non-party unless in response to an order of a court of competent jurisdiction.

23.     The parties will not object to the producing party or non-party having a reasonable opportunity to appear in the litigation or other proceeding commanding disclosure of such Confidential or Highly Confidential Information for the sole purpose of seeking to prevent or restrict disclosure thereof.

## VII.     Filing Under Seal

24.     All Confidential or Highly Confidential Information filed with the Court shall be filed under seal pursuant to the following procedures:

(a)     Where possible, only confidential portions of filings with the Court shall be filed under seal. Information filed under seal shall be placed in a sealed envelope on which it shall be endorsed with the title to this action, the words "FILED UNDER SEAL" and a statement substantially in the following form:

"This envelope is sealed pursuant to order of the Court and contains Confidential Information [and/or Highly Confidential Information] filed in this case by [name of Party] and is not to be opened or the contents thereof to be displayed or revealed except by order of the Court."

The envelope shall not be opened without further order of the Court except by persons *authorized* to have access to such information pursuant to paragraph 13 or 14, as applicable, which person(s) shall return the information to the Clerk in a sealed envelope.

Any envelope containing information filed under seal that is an exhibit to a pleading shall also bear the name of the pleading. Where documents filed under seal are transmitted between or among the parties, the above message shall be placed in the electronic mail message by which such documents are transmitted or on the facsimile cover sheet or on a sheet directly following the facsimile cover sheet for the facsimile by which such documents are transmitted. A full and unredacted copy of any such submission may be provided directly to the Court's chambers, marked "Chambers Copy" and "Contains Confidential or Highly Confidential Information Subject to Protective Order."

(b)     As soon as practicable, but in no event after ten business days from the filing of paper copies of the submitted materials under seal, the submitting party shall electronically file with the Court, for its public file, a copy of the submitted materials with the Confidential Information and/or Highly Confidential Information redacted.

12

(c)     If any party objects to identified portions of the materials remaining under

seal, it shall, within ten business days after submission of such materials to the Court,

state its objections in a letter sent by facsimile or electronic mail to counsel for all parties

in this action. The interested parties shall promptly meet and confer to attempt to resolve

those objections and, if such objections cannot be resolved, the party asserting such

objections shall promptly tender those objections to the Court for resolution. The revised

public filing, if any, of that submission shall be made by the submitting party within ten

business days after the Court's decision resolving that dispute.

**VIII.   <u>Use of Confidential or Highly Confidential Information at Trial</u>**

25.     In the event that any Confidential Information or Highly Confidential Information

is used in any pre-trial court hearing or proceeding in this action, and there is any dispute as to

whether such material continues to be Confidential or Highly Confidential, the parties will meet

and confer in an effort to resolve such dispute.

26.     The parties shall confer and attempt to agree, before any trial or other hearing, on

the procedures under which Confidential or Highly Confidential Information may be introduced

into evidence or otherwise used at such trial or hearing. Upon reaching agreement, the parties

shall give notice of the terms of such agreement to each non-party producing any Confidential or

Highly Confidential Information which may be used or introduced at such trial or hearing.

Absent agreement, the Court shall be asked to issue an order governing the use of such

Confidential or Highly Confidential Information at trial or hearing upon reasonable notice to all

parties and non-parties who have produced such information. The parties shall provide non-

parties with notice of potential use at trial of any Confidential or Highly Confidential

Information produced by such non-parties if and when any such materials are listed as potential

exhibits in the required filings prior to commencement of trial. The parties shall give notice as soon as practicable after Confidential or Highly Confidential Information which is not listed on the exhibit list is determined to be likely to be used by counsel for a party in the course of examination or cross-examination at trial.

IX.   **Procedures upon Termination of Action**

27.   After the running of any applicable time to appeal the final order entered in this litigation, any producing party or non-party may request that any or all parties return or destroy any Discovery Material the producing party or non-party has provided, which request shall be honored. It shall be the obligation of the party receiving Discovery Material to obtain the return of any such document(s) or information distributed by that party to any expert, consultant or other person in the course of the litigation or to obtain written certification of destruction of such document(s) or information from such expert, consultant or other person.  If the possessing party to which such a request has been directed elects to destroy the Discovery Material rather than return it, such possessing party shall provide the producing party or non-party written certification that the destruction has been completed. Nothing in this provision shall limit the rights, if any, of any party or non-party to object to and seek a ruling of the Court concerning a party's retention of any discovery material.  To the extent any person retains copies of certain documents pursuant to the terms of this paragraph, such information shall continue to be subject to the protections provided by this Order.  In addition, all restrictions in this Order regarding the use by any person of information or knowledge obtained from Discovery Material shall continue even after such Discovery Material is returned or destroyed.   This Court shall have continuing jurisdiction to modify, amend, enforce, interpret or rescind this Order notwithstanding the termination of this action.

14

### X.   **Miscellaneous**

28.      This Order shall not affect the right of any party or non-party to oppose production of Discovery Material on any ground permitted by the Federal Rules of Civil Procedure, including any applicable privilege. Moreover, the Order shall not affect the scope of discovery by any party that is not otherwise proper under the Federal Rules of Civil Procedure. Further, this Order shall not prejudice in any way the rights of any party to object to the authenticity or admissibility of any document, testimony, or other evidence.

29.      Nothing in this Order shall prejudice the right of any party or non-party to move the Court to broaden or restrict the rights of access to and use of particular Discovery Material, or to seek modifications of this Order upon due notice to all other parties and affected non-parties.

30.      The parties agree to be bound by the terms of this Order pending the entry of this Order by the Court and any violation of its terms shall be subject to the same sanctions and penalties as if this Order had been entered by the Court.

31.      The provisions of this Order shall become effective upon entry by the Court; however, all material produced and designated as Confidential or Highly Confidential pursuant to this Order prior to the entry of this Order by the Court shall be subject to, and governed by, its provisions as though entered by the Court prior to such designation.

32.      In the event additional parties join or are joined in this action, they shall not have access to Discovery Material until such newly joined party or its counsel on its behalf has executed and filed with the Court its agreement to be fully bound by this Order.  Upon filing such agreement with the Court, such newly joined party shall be treated as a "party" as that term

is used herein and shall be entitled to the same rights and subject to the same restrictions as may

be imposed herein on any of the parties to this action.

Dated: New York, New York
     April 11, 2009

FRIEDMAN LAW GROUP LLP        BOIES, SCHILLER & FLEXNER LLP

_Gary B. Friedman /js_          _Donald L. Flexner_
Gary B. Friedman (GF 2597)      Donald L. Flexner (DF 4812)
Tracey Kitzman (TK 5869)        Philip C. Korologos (PK 3299)
Dean M. Solomon (DS 3699)      Eric Brenner (EB 2177)
270 Lafayette Street           Damien Marshall (DM 2673)
14th Floor                  Alanna Rutherford (AR 0497)
New York, New York 10012      575 Lexington Avenue
(212) 680-5150             New York, NY 10022
                        (212) 446-2300

Attorneys for Plaintiffs         Attorneys for Defendants

**SO ORDERED:**

_____    Dated: April ___ , 2009
Honorable William H. Pauley III
United States District Judge

16

Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                               :

IN RE: AMERICAN EXPRESS ANTI-STEERING     :
RULES ANTITRUST LITIGATION                    :        **No. 06-CV-2974-WHP**
                                               :

**This Document Relates to:  All Actions**       :
                                               :
---------------------------------------------------------------x

## STIPULATION AND ORDER REGARDING EXPERT DISCOVERY

       The parties hereto, through their respective counsel of record, hereby stipulate to the following regarding expert discovery and testimony in this matter.

       1.     In order to avoid consuming the parties' and the Court's time and resources on potential discovery issues relating to experts, the parties have agreed to certain limitations on the scope of expert-related discovery and testimony in this matter.  Neither the terms of this stipulation, nor the parties' agreement to this stipulation, imply that any of the information that need not be disclosed pursuant to this stipulation would otherwise be discoverable.

       2.     The following categories of data, information, or documents need not be disclosed by any party or person, and all are outside the scope of permissible discovery in these actions (including, but not limited to, deposition questions and disclosures required pursuant to Fed. R. Civ. P. 26(a)(2)):

               a)     any notes or other writings taken or prepared in connection with this action or any related litigation by or for a non-testifying expert, including a non-testifying expert employed by or affiliated with a testifying expert (hereinafter "Consulting Expert"), except any notes or writings received or reviewed by any testifying expert;

b)      written or oral communications and notes of communications, to or from any Consulting Expert, except to the extent any such communications are conveyed to or from a testifying expert or reflect communications to or from a testifying expert;

c)      drafts of Fed. R. Civ. P. 26(a)(2)((B) expert reports or any expert affidavit or declaration, including any comments contained within any such draft; and

d)      communications with counsel.

3.      The parties agree to comply with this Stipulation and Order pending the Court's approval and entry of this Order.

Dated: New York, New York
       April 22, 2009

**FRIEDMAN LAW GROUP LLP**                    **BOIES, SCHILLER & FLEXNER LLP**


*Gary B. Friedman /lg*                        *Donald Flexner*
Gary B. Friedman (GF 2597)                    Donald L. Flexner (DF 4812)
Tracey Kitzman (TK 5869)                      Philip C. Korologos (PK 3299)
Dean M. Solomon (DS 3699)                     Eric Brenner (EB 2177)
270 Lafayette Street                          Damien Marshall (DM 2673)
14th Floor                                    Alanna Rutherford (AR 0497)
New York, New York 10012                      575 Lexington Avenue
(212) 680-5150                                New York, NY 10022
                                              (212) 446-2300

Attorneys for Plaintiffs                      Attorneys for Defendants


**SO ORDERED:**


_____              Dated: April ___ , 2009
Honorable William H. Pauley III
United States District Judge

Exhibit C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                          :

IN RE: AMERICAN EXPRESS ANTI-STEERING   :
RULES ANTITRUST LITIGATION              :       **No. 06-CV-2974-WHP**
                          :

**This Document Relates to:  All Actions**   :
                          :
-----------------------------------------------------------------x

## [PLAINTIFFS' PROPOSED] CASE MANAGEMENT ORDER

Pursuant to Fed. R. Civ. P. 16(b) and 26(f)(3)(e), the Court hereby enters the

following Case Management Order in the above-captioned matter:

1.      The following schedule shall govern discovery and other pre-trial matters:

| Date | Event |
|---|---|
| **1. Fact Discovery & Class Certification** | |
| May 1, 2009 | As of this date, the parties may propound initial discovery (including without limitation document requests, interrogatories, deposition notices and third party subpoenas) in conformity with the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. |
| October 1, 2009 | Last day to join other parties or amend pleadings. Any application to amend pleadings or add parties after this date shall be supported by a showing of good cause under Rule 16(b)(4). |
| October 15, 2009 | Last day for production of privilege log in response to all document requests served on or before May 15, 2009. |
| January 15, 2010 | Last day to move for class certification.  Plaintiffs may move at any prior time. Once Plaintiffs file a class certification motion, then the parties shall submit to the Court a deposition and briefing schedule consistent with following:<br>1.  Amex shall depose plaintiffs' class expert(s) within 30 days; |

| | |
|---|---|
| | 2. Amex shall then file opposition papers within 20 days thereafter;<br>3. Plaintiffs shall then depose Amex's expert(s) within 20 days thereafter;<br>4. Plaintiffs shall file reply papers within 20 days thereafter.<br>5. Oral argument or hearing to be scheduled by the Court |
| June 15, 2010 | Fact Discovery closes |
| | **II. Expert Discovery & Briefing** |
| July 30, 2010 | Plaintiffs' expert reports on the merits under Rule 26(a)(2) shall be served on or before this date.<br>• Plaintiffs shall make their expert(s) available for one day of deposition at Amex's request following the report |
| September 30, 2010 | Amex's merits expert reports shall be served on or before this date.<br>• Amex shall make its expert(s) available for one day of deposition at Plaintiffs' request following the report |
| November 15, 2010 | Plaintiffs' reply expert reports (if any) shall be served on or before this date. |
| | **III. Dispositive Motions; Trial** |
| December 15, 2010 | Summary judgment moving papers due<br>• In the event there is no dispositive motion filed, the parties shall confer and attempt to present the Court with a revised Case Management Order |
| January 31, 2011 | Summary Judgment opposition papers due |
| February 28, 2011 | Summary judgment reply papers due |
| To be scheduled by the Court | Oral argument on dispositive motions |
| To be scheduled by the Court | Parties to submit a Joint Pretrial Order |
| To be scheduled by the Court | Trial |

2.      The following limitations on discovery shall apply to these actions:

a.  *Depositions*:  The limitations on the number of depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(1) shall be expanded to allow plaintiffs to take 25 depositions of American Express witnesses without further leave of Court, exclusive of depositions that are noticed in the Individual Plaintiffs' Cases.  The presumptive 7-hour limitations of Rule 30(d)(1) shall apply to all depositions noticed by Class Plaintiffs. In addition, Class Plaintiffs shall be permitted to question witnesses for 3 hours of "on the record" time at depositions noticed solely by Individual Plaintiffs.  There shall be no fixed limit upon the number of third party depositions.

b.  *Interrogatories*:  The limitations set forth in Fed. R. Civ. P. 33(a)(1) upon the number of interrogatories shall not apply, so long as all interrogatories are in compliance with Local Civil Rule 33.3.

**SO ORDERED:**

_____       Dated:  April ___ , 2009
Honorable William H. Pauley III
United States District Judge

3

Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                    :

IN RE: AMERICAN EXPRESS ANTI-STEERING  :
RULES ANTITRUST LITIGATION              :      No. 06-CV-2974-WHP
                                      :

This Document Relates to:  All Actions    :
                                      :
-------------------------------------------------------------x

## [DEFENDANTS' PROPOSED] CASE MANAGEMENT ORDER

      Pursuant to Fed. R. Civ. P. 16(b) and 26(f)(3)(e), the Court hereby enters the

following Case Management Order in the above-captioned matter:

    1.     The following schedule shall govern discovery and other pre-trial matters:

| Date | Event |
|------|-------|
| **I. Fact Discovery** | |
| 5/1/09 | Fact discovery begins (to include third-party discovery) |
| 6/15/09 | FCRP 26(a)(1) initial disclosures due |
| 10/1/09 | Last day to join other parties or amend pleadings. Any application to amend pleadings or add parties after this date shall be supported by a showing of good cause under Rule 16(b)(4). |
| 3/1/10 | Deadline for completion of party document productions |
| 9/1/11 | Fact discovery closes |
| **II. Expert Discovery and Briefing** | |
| 12/1/11 | Plaintiffs' expert reports(s) due |
| 3/1/12 | Defendants' expert report(s) due |
| 5/1/12 | Plaintiffs' rebuttal expert report(s), if any, due |
| 8/1/12 | Deadline for completion of expert depositions |

| | III. Class Certification/Dispositive Motions |
|---|---|
| 10/1/12 | Class certification and/or dispositive motions due |
| 11/15/12 | Responses to class certification and/or dispositive motions due |
| 12/17/12 | Replies in support of class certification and/or dispositive motions due |
| To be scheduled by the Court | Oral argument on dispositive motions |
| | IV. Pretrial Order and Trial |
| To be scheduled by the Court | Parties to submit a Joint Pretrial Order |
| To be scheduled by the Court | Trial |

2.      The following limitations on discovery shall apply to these actions:

   a.   No more than 50 non-contention interrogatories, including all discrete

        subparts, shall be served on any Party.  For the purposes of this

        limitation, interrogatories served by individual merchant plaintiffs

        bringing substantially similar cases in the Eastern District of New

        York, including *Rite-Aid Corp. v. American Express*, 08-CV-2315

        (E.D.N.Y.) (NG) and related cases (the "Individual Plaintiffs") shall be

        counted against the limit applicable to Plaintiffs in the above-

        captioned actions.

   b.   Absent consent or Court order for good cause shown, depositions of

        each Party shall be limited to 25.  For the purposes of this limitation,

        depositions noticed by the Individual Plaintiffs shall be counted

        against the limit applicable to Plaintiffs in the above-captioned actions.

        Absent consent or Court order for good cause shown, depositions shall

be no more than 7 hours on the record per witness (including time for

questioning of any such witness by counsel in any of the Individual

Merchant Cases).  Absent consent or Court Order for good cause

shown, no witness deposed in these actions may be re-deposed in the

Individual Merchant Cases and no witness deposed in any of the

Individual Merchant Cases may be re-deposed in these actions.

**SO ORDERED:**

_____          Dated:  April ___ , 2009
Honorable William H. Pauley III
United States District Judge

Exhibit E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                       :

IN RE: AMERICAN EXPRESS ANTI-STEERING    :
RULES ANTITRUST LITIGATION                       :       **No. 06-CV-2974-WHP**
                                         :

**This Document Relates to:  All Actions**    :
                                         :

---------------------------------------------------------------x

## [DEFENDANTS' PROPOSED] COORDINATION ORDER

**WHEREAS**, a putative class action is pending in the United States District Court for the Southern District of New York purportedly on behalf of all merchants in the United States and against American Express Travel Related Services Company, Inc. and American Express Company (together, "American Express") alleging that the so-called "non-discrimination rules" or "anti-steering rules" of American Express violate Sections 1 and 2 of the Sherman Act.

**WHEREAS**, all complaints filed by putative class plaintiffs in the United States District Court for the Southern District of New York asserting similar allegations against American Express have been consolidated under Master File No. 06 CV 2974 (WHP) with the caption *In re: American Express Anti-Steering Rules Antitrust Litigation* (the "Putative Merchant Class Case") and Proposed Class Plaintiffs' Interim Co-Lead Counsel have been appointed in those proceedings.

**WHEREAS**, certain actions are pending and additional actions may be filed in the future against American Express in the United States District Court for the Eastern District of New York by merchants in their individual capacities alleging that the so-called "non-discrimination rules" or "anti-steering rules" of American Express violate

Sections 1 and 2 of the Sherman Act, including actions filed by Bi-Lo, LLC (Civil Action No. 08-2380), CVS Pharmacy, Inc.(Civil Action No. 08-2316), H.E. Butt Grocery Company (Civil Action No. 08-2406), Rite Aid Corporation and Rite Aid Hdqtrs. Corp. (Civil Action No. 08-2315), and Walgreen Co. (Civil Action No. 08-2317), and such non-putative class Complaints have been consolidated under Consolidated Case No.: 08-CV-2315 (NGG) (RER) (the "Individual Merchant Cases");

**WHEREAS**, in the absence of coordination of discovery among the Putative Merchant Class Case and the Individual Merchant Cases (collectively "Amex NDR Cases"), there is a substantial likelihood that American Express, each of the named Plaintiffs in the Amex NDR Cases, merchants that are not named plaintiffs in the Amex NDR Case(s), and others will be subject to undue burden and expense associated with:

(a) preparation for and depositions of the same employees, executives and corporate representatives in multiple proceedings involving redundant questioning and duplicative areas of inquiry;

(b) responding to duplicative and overlapping requests for production of documents and/or subpoenas in multiple proceedings imposing significant repetitive obligations to search and produce responsive documents from the same locations and custodians;

(c) responding to overlapping and substantively comparable interrogatories and requests for admission; and

(d) potentially conflicting negotiations and judicial decisions relating to disputes that may arise regarding discovery and related issues in parallel proceedings in two different courts;

**NOW, THEREFORE, IT IS HEREBY ORDERED,** that all parties in the

Putative Merchant Class Case shall follow the Discovery Coordination Protocol annexed

hereto, subject to further order of the Court.


**SO ORDERED:**


_____          Dated: April ___ , 2009
Honorable William H. Pauley III
United States District Judge

Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                           :
IN RE: AMERICAN EXPRESS ANTI-STEERING                      :
RULES ANTITRUST LITIGATION                                 :        No. 06-CV-2974-WHP
                                                           :
This Document Relates to:  All Actions                     :
                                                           :
                                                           :
-----------------------------------------------------------x

## DISCOVERY COORDINATION PROTOCOL

The following discovery coordination protocol (the "Discovery Coordination Protocol")
shall apply to (i) the putative class actions pending in the United States District Court for the
Southern District of New York purportedly on behalf of all merchants in the United States and
against American Express Travel Related Services Company, Inc. and American Express
Company (together, "American Express") consolidated under Master File No. 06 CV 2974
(WHP) with the caption *In re: American Express Anti-Steering Rules Antitrust Litigation* (the
"Putative Merchant Class Case"), and (ii) those certain actions that are pending and those
additional actions that may be filed in the future against American Express in the United States
District Court for the Eastern District of New York by merchants in their individual capacities
alleging that the so-called "non-discrimination rules" or "anti-steering rules" of American
Express violate Sections 1 and 2 of the Sherman Act, including actions filed by Bi-Lo, LLC
(Civil Action No. 08-2380), CVS Pharmacy, Inc.(Civil Action No. 08-2316), H.E. Butt Grocery
Company (Civil Action No. 08-2406), Rite Aid Corporation and Rite Aid Hdqtrs. Corp. (Civil
Action No. 08-2315), and Walgreen Co. (Civil Action No. 08-2317), which cases have been
consolidated under Consolidated Case No.: 08-CV-2315 (NGG) (RER) (the "Individual
Merchant Cases").    The Putative Merchant Class Case and the Individual Merchant Cases are
referred to collectively herein as the "Amex NDR Cases".

1

A.    <u>**General Provisions Regarding Coordination of Discovery**</u>

      1.      All parties to the Putative Merchant Class Case and the Individual Merchant Cases shall make all reasonable good faith efforts to cooperate in coordinating and integrating discovery in all of the Amex NDR Cases so as to avoid duplication and undue burden on any party or non-party.

      2.      Upon effectiveness of this Discovery Coordination Protocol in each of the Amex NDR Cases and subject to an appropriate Protective Order for the protection of confidential information to be entered in each of the Amex NDR Cases, all counsel in any of the Amex NDR Cases (a) shall have a right of access to all Discovery Responses (as defined in (A)(4) below) in any of the Amex NDR Cases, (b) shall have the right to obtain a copy of any such Discovery Responses at a reasonable cost; and (c) shall have the right to participate in any deposition taken in any of the Amex NDR Cases.

      3.      Any discovery request, including but not limited to requests for the production of documents, interrogatories, requests for admission, deposition notices, and subpoenas for documents or depositions (collectively "Discovery Request"), served in any of the Amex NDR Cases shall be served on all parties to the Amex NDR Cases, as if such Discovery Request had been served in each of the Amex NDR Cases.

      4.      Any response to discovery in any of the Amex NDR Cases, including but not limited to any materials produced in response to discovery requests directed to any party or any subpoena served on any non-party, privilege logs, responses to interrogatories, responses to requests for admission, transcripts of party or non-party depositions and exhibits thereto, correspondence, orders or other materials provided in lieu of any form of discovery, and correspondence, documents or other materials supplementing or otherwise modifying any

discovery response (collectively "Discovery Response"), that is produced, served, or taken in any of the Amex NDR Cases may be used in any of the other Amex NDR Cases as if such discovery had been taken in the Amex NDR Case in which the party is seeking to use such discovery, with all objections being preserved.

5.      If any dispute arises with regard to any Discovery Request or Discovery Response in any of the Amex NDR Cases, such dispute shall be submitted for determination by the court in which the action where the Discovery Request or Discovery Response at issue was served is pending. Counsel or record in the Amex NDR Cases shall be served with copies of all submissions to the Court relating to any such dispute, shall be notified of all hearings or conferences with the Court, and shall be served with a copy of all decisions of the Court relating thereto.  Should any party make a submission in any of the Amex NDR Cases relating to any issue or subject as to which there has been a prior decision issued by a different court in any Amex NDR Case, the party making that submission shall bring that prior decision to the attention of the court in which that party is making such submission and attach a copy of such prior decision to such submission.

6.      Pursuant to Fed. R. Civ. P. 5(b)(D), service by e-mail on counsel of record in the Amex NDR Cases is sufficient for all purposes.  A courtesy copy of all materials served by e-mail shall also be sent to all parties to the Amex NDR Cases by regular mail, by hand delivery, or by overnight courier to the "hard copy designee(s)" as shall be identified by each party.   Any party may modify the list of counsel who shall receive e-mail and/or hard copy service for that party by serving a notice on all parties of such modification.

**B.**     <u>Written Discovery Directed To Any Party</u>

1.     Proposed Class Plaintiffs' Interim Co-Lead Counsel in the Putative Merchant Class Case and Plaintiffs' counsel in the Individual Merchant Cases shall in good faith confer and coordinate and shall serve consolidated requests with regard to any written discovery propounded upon American Express relating to any nonprivileged matter that is relevant to any claim or defense in the Putative Merchant Class Case and to any claim or defense in the Individual Merchant Cases ("Common Written Discovery Requests"). This obligation applies to requests for production of documents, interrogatories, requests for admission, and any other written discovery directed to American Express. The Common Written Discovery Requests may be served by any Plaintiff in any of the Amex NDR Cases provided that counsel serving such Common Written Discovery Request certifies in writing that the Request was prepared in coordination with Plaintiffs' counsel in all of the Amex NDR Cases. The time for American Express to respond to any Common Written Discovery Request shall run from the date upon which such certification or such Common Written Discovery Request is served on American Express, whichever is later.

2.     All requests for written discovery propounded upon American Express (including requests for production, interrogatories, requests for admission, or any other written discovery) that relate to issues or subjects that are unique to either the Putative Merchant Class Case or one of the Individual Merchant Cases shall be identified as such by use of the term "Case-Specific" in the title of such document. Any request for written discovery propounded upon American Express that does not contain the term "Case-Specific" in the title will be deemed a Common Written Discovery Request.

4

3.     American Express reserves all rights to object to and/or move for a protective order in the Court in which any request for written discovery propounded upon American Express is served, including on the grounds that such discovery is unnecessarily duplicative or that discovery that is purportedly unique to an individual action is a Common Written Discovery Request that should have been prepared through coordination and conferral as set forth in (B)(1) above.

4.     If, in any of the Amex NDR Cases, any party produces or otherwise makes available for inspection and/or copying any Discovery Response and a complete copy of that Discovery Response is not served on all counsel identified in Exhibit A hereto, the party providing such Discovery Response shall concurrently provide written notice to counsel of record that such Discovery Response is available for inspection and/or copying and shall make such Discovery Response available for inspection and copying by counsel for any party in any of the Amex NDR Cases at the cost of the entity requesting such copies.

5.     A Discovery Response provided in any of the Amex NDR Cases may be used in any other Amex NDR Case as if such Discovery Response had been produced in response to a Discovery Request noticed, served, or propounded in such case.  Nothing herein shall constitute a waiver of a party's right to object to the admissibility of any Discovery Response.

C.     **Third Party Discovery**

1.     Proposed Class Plaintiffs' Interim Co-Lead Counsel in the Putative Merchant Class Case and Plaintiffs' counsel in the Individual Merchant Cases shall in good faith confer and coordinate regarding any subpoena to be issued by any of them relating to any of the Amex NDR Cases for the production of documents, which subpoena is to be served on any person or entity that is not a party to one or more of the Amex NDR Cases.  Absent leave of court, which

5

shall only be granted on good cause shown, no more than one document subpoena relating to the Amex NDR Cases may be served on any non-party to the Amex NDR Cases by any of the Plaintiffs in the Amex NDR Cases.

2.      Any document subpoena relating to any of the Amex NDR Cases shall be concurrently served on all counsel of record in the Amex NDR Cases.  All such counsel shall have prompt notice of and an opportunity to inspect and/or copy all materials produced by any non-party in response to any such subpoena at the cost of the entity requesting such copies.  The parties to the Amex NDR Cases shall confer in good faith to establish procedures for copying and distributing materials produced in response to third party document subpoenas that will minimize the burden on non-parties and assure that all parties to the Amex NDR Cases have prompt notice of any such production, the opportunity to inspect any such materials, and the ability to obtain a copy of all such materials produced to any other party to the Amex NDR Cases at the time of such production.

3.      Materials produced by any non-party in response to a subpoena issued in any of the Amex NDR Cases may be used in any other Amex NDR Case as if such materials had been produced in response to a subpoena issued in such case.  Nothing herein shall constitute a waiver of a party's right to object to the admissibility of any materials produced by any non-party.

**D.      Deposition Discovery**

1.      Proposed Class Plaintiffs' Interim Co-Lead Counsel and counsel for the Plaintiffs in the Individual Merchant Cases shall in good faith confer and coordinate before requesting, noticing, or serving a subpoena for the deposition in any of the Amex NDR Cases of any current or former employee of American Express, any corporate representative of American Express, or any person or entity that is not a party to any of the Amex NDR Cases.

2.     No individual who is deposed in any of the Amex NDR Cases in an individual capacity shall be deposed again in any of the Amex NDR Cases, absent the agreement of the parties, or order of the Court, on good cause shown.   All parties reserve all rights to object and/or move for a protective order with regard to any deposition, including on the ground that such discovery is unnecessarily duplicative.

3.     The parties are encouraged to confer in a good faith effort to agree upon mutually-convenient dates for the depositions of parties and employees of parties to any of the Amex NDR Cases.  If any party serves a deposition notice or subpoena, the date for the deposition as set forth in that notice or subpoena shall be no less than 3 weeks from the date on which the deposition notice or subpoena was served.

4.     If the date for the deposition as set forth in a deposition notice to any party is not convenient for the witness or his/her counsel, the party receiving such deposition notice shall, within two weeks of receiving such notice, provide at least 3 available dates for such deposition.

5.     Once a date, time, or location for a deposition has been agreed upon by counsel for all parties to the Amex NDR Cases or has been set forth in a deposition notice or subpoena, Proposed Class Plaintiffs' Interim Co-Lead Counsel, counsel for the Plaintiffs in the Individual Merchant Cases, and counsel for American Express shall confer before changing the time or location of any such deposition.

6.     All notices of deposition and copies of all non-party deposition subpoenas served in any of the Amex NDR Cases shall be served on all counsel of record in the Amex NDR Cases.

7.     To the extent counsel for any party in any of the Amex NDR Cases becomes aware that any proposed or scheduled deponent is represented by counsel other than counsel for

a party in one or more of the Amex NDR Cases, they shall identify that counsel to all counsel of record in the Amex NDR Cases.

8.     Subject to the presumptive allocations of time set forth in (D)(10) below, any party in any of the Amex NDR Cases shall be entitled to participate in any deposition in any of the Amex NDR Cases through counsel, by asking non-duplicative questions.  Proposed Class Plaintiffs' Interim Co-Lead Counsel and Plaintiffs' counsel in the Individual Merchant Cases shall in good faith coordinate and confer prior to any deposition in order to avoid duplication and ensure efficient conduct of the deposition.

9.     As a general rule, subject to further agreement among the parties to this Discovery Coordination Order, or Court order, a deposition shall not last more than seven hours "on the record" in a day nor more than one day.  However, the parties to this Discovery Coordination Order agree to confer in good faith regarding the need for additional time to complete particular depositions beyond the one-day, seven hours-a-day general rule.

10.     The parties to this Discovery Coordination Order shall work in good faith to allocate the time for examination available to each examining party.  Absent such agreement, in any deposition of any current or former employee of American Express, Proposed Class Plaintiffs' Interim Co-Lead Counsel shall be presumptively entitled to one-half of the time "on the record" and Plaintiffs' counsel in the Individual Merchant Cases shall be presumptively entitled to one-half of the time "on the record" in such deposition.  In addition, absent such agreement, in any deposition of any current or former employee of any Plaintiff in any of the Amex NDR Cases, counsel for American Express shall be presumptively entitled to all of the time "on the record" in such deposition.  Further, absent such agreement, in any deposition of any non-party, the party initially serving a document subpoena on that person or entity (or if

8

there has been no document subpoena served on that non-party, the deposition subpoena) shall be presumptively entitled to two-thirds of the time "on the record" in such deposition. Notwithstanding the foregoing, the party or non-party producing the witness, on the day of the deposition and before the close of the record for the deposition, may question the witness on any subject addressed in the deposition for whatever time period such party or non-party so elects . Such questioning shall not be counted against the time "on the record" available for questioning by other parties and shall not be deemed to waive the time limit "on the record" set forth in (D)(9) or any other time limitation agreed upon by the parties with regard to such deposition.

11.     Counsel in any of the Amex NDR Cases is entitled to obtain from the court reporter, at counsel's expense, a transcript and copies of all exhibits to any deposition taken in any of the Amex NDR Cases, whether such counsel attended the deposition or not.

12.     All depositions taken in any of the Amex NDR Cases may be used in any other Amex NDR Case as if such deposition had been noticed in such case.   Objections at any deposition taken in any of the Amex NDR Cases shall be preserved as if they had been made in all of the Amex NDR Cases.

13.     All depositions noticed in any of the Amex NDR Cases shall be governed by the Federal Rules of Civil Procedure.

14.     Nothing herein shall constitute a waiver of a witness's right to apply to a court of competent jurisdiction for protection to which he or she is otherwise entitled.