UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re American Express Anti-Steering Rules      11-MD-2221 (NGG) (RER)
Antitrust Litigation (NO II)

**SUMMARY ORDER**

------------------------------------------------------------X

**RAMON E. REYES, JR., United States Magistrate Judge:**

      Before the Court is the Merchant Plaintiffs' motion to compel the American Express Defendants ("Amex") to produce certain "white papers" concerning its non-discrimination rules that it had provided to the Department of Justice prior to the commencement of this litigation. (Dkt. No. 156.) Amex opposes the motion, contending that the white papers are protected against disclosure by the attorney work product doctrine and the Antitrust Civil Process Act, 15 U.S.C. §§ 1311, *et seq*. Having read the parties' submissions, heard oral argument, and reviewed *in camera* the documents in question, I hereby grant the Merchant Plaintiffs' motion.

BACKROUND

      In 2008 and 2010, Amex produced three and nine documents, respectively, to the United States Department of Justice Antitrust Division ("DOJ") as part of DOJ's pre-complaint investigation into the purported anti-competitive aspects of the non-discrimination rules in Amex's merchant card agreements. As part of its investigation, on October 10, 2008, DOJ served a Civil Investigative Demand ("CID") on Amex calling for the production of certain documents. The nine documents Amex produced in 2010 were purportedly in response to the CID, the three documents produced in 2008 obviously were not, as the CID had not yet been

served.[1]  The three documents produced in 2008 have been produced to the Merchant Plaintiffs in this litigation, the nine documents produced in 2010 have not.  These documents generally consist of letters and presentations from Amex's counsel to DOJ, and certain expert reports, and were provided in an effort to dissuade the government from bringing suit against Amex.  The Merchant Plaintiffs seeks disclosure of the nine documents from 2010.[2]

## ANALYSIS

I agree with the Merchant Plaintiffs that this dispute is controlled by *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993).[3]  The defendants in *Steinhardt* were sued in a private class action for allegedly manipulating the market in two-year Treasury notes.  *Id.* at 232.  During the SEC's preliminary investigation of the allegations underlying the class action, the defendants prepared and furnished to the SEC a memorandum and exhibits that addressed some of the SEC's questions.  *Id.*  When the private plaintiffs in the class action sought production of that memorandum and exhibits in discovery, defendants asserted work product protection.  *Id.*  The Second Circuit held that the defendants had waived any work product protection when they voluntarily shared their memorandum with the SEC, an adversary.  *Id.* at 235 ("Once a party

---

[1] The three 2008 documents may have been produced in response to a July 3, 2007 "voluntary production letter" from DOJ, which is identified in the CID.

[2] The brevity of this background is necessary in light of the parties' assertion at the July 12, 2012 conference that a decision on the motion to compel is required prior to an adjourned deposition that has been rescheduled for July 20, 2012.  The parties' arguments are laid out in their respective submissions and in the transcripts of the June 5, 2012 and July 12, 2012 conferences, and they need not be repeated here.  (Dkt. Nos. 156, 159, 163.)

[3] Even if it is not "on all fours."

allows an adversary to share the otherwise privileged thought processes of counsel, the need for privilege disappears.")

The court in *Steinhardt* recognized, however, that the situation presented was "distinguishable from situations in which disclosure to an adversary is only obtained through compulsory legal process." *Id.* at 234 (citing *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1373 (D.C. Cir. 1984)). The Second Circuit, thus declined "to adopt a *per se* rule that all voluntary disclosures to the government" result in waiver, and held that "rules relating to privilege in matters of governmental investigations must be [crafted] on a case-by-case basis." *Id.*, at 236 (citations omitted). Such rules must be "applied in a common sense way in light of reason and experience." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) (citations omitted). Here, reason and experience dictate that Amex waived any work product protection for the nine 2010 documents when it voluntarily produced them to the government.

That the government was Amex's adversary at the time the 2010 documents were produced, cannot reasonably be disputed. At the time, the government was investigating purported anti-competitive aspects of Amex's non-discrimination rule, with an eye toward bringing an antitrust lawsuit.

That Amex voluntarily produced the 2010 document to the government also cannot reasonably be disputed. Although Amex contends that it was compelled to produce the 2010 documents in response to the CID, that contention does not withstand scrutiny. I have reviewed the CID and the 2010 documents, and conclude that the 2010 documents are not directly responsive to the CID. The CID contains twenty-four separate requests for information (documents and interrogatories). For example, "all documents *in the files of management*

3

discussing the extent to which merchants pass through merchant fees to consumers" and "all documents *in the files of management* discussing competition with card networks . . ." (emphasis added). Although there is some *factual* information in the 2010 documents that is arguably responsive to the CID, the vast majority of the information contained in the documents is not.[4] Rather, the documents largely contain arguments from counsel as to why Amex's non-discrimination rules are pro-competitive and should not form the basis of an antitrust lawsuit. Indeed, many of the 2010 documents appear to have been generated principally, if not entirely, and specifically to dissuade the government from filing suit; they are not documents generated contemporaneously with Amex's business.[5] The self-serving legend on the face of some of the documents that they are being provided "in further response to Civil Investigative Demand No. 25238" does not alter that conclusion, and it is not controlling.[6] The production to the government of documents generated by counsel *during* a government investigation, with the

---

[4] Factual information specifically requested by DOJ would not qualify for work product protection as it does not reveal the thought process of Amex's counsel. The factual information also could not be shielded from production here simply because it was also produced in response to the CID. Moreover, I see no basis to withhold many, if not most, of the exhibits to the 2010 documents, which consist of Lexis/Nexis and Westlaw reports, reports to Congress, transcripts of court proceedings, etc.

[5] That the 2010 documents are not directly responsive to the CID leads me to conclude that they may have been produced in response to subsequent oral or written requests from DOJ for more information. That does not, however, alter my conclusion that the documents were voluntarily produced. Oral and written requests from DOJ for more information do not carry with them the legal requirements of a CID, nor do they call for the revelation of attorney work product.

[6] At least three of the documents do not contain this legend, and therefore they were clearly voluntarily produced. (See 2/26/10 letter from D. Flexner to A. Newton McFadden and J. Wilder; 6/1/10 American Express Presentation to the Department of Justice; and 6/10/10 letter from E. Chesler and D. Flexner to C. Varney and attached reports.)

specific intent to dissuade the government from bringing suit, is inconsistent with the purposes behind the attorney work product doctrine.

That these documents were voluntarily produced is also underscored by the CID itself, which does not on its face call for the production of attorney work product, and which expressly provides that privileged information can be withheld from production provided that it is properly logged. Thus, Amex had a choice when responding to the CID and any subsequent oral or written requests. It voluntarily chose to reveal its counsels' thought processes, legal arguments, and facts in support thereof, in an effort to dissuade the government from filing suit. That effort apparently failed, but Amex cannot now shield those documents from production in this case.

Finally, I reject Amex's contention that the 2010 documents should be disclosed to the Merchant Plaintiffs, if ever, only during the expert discovery phase. Waiting until the expert discovery phase would unnecessarily delay fact discovery. One deposition has already been adjourned when the government sought to question a witness about one of the 2010 documents.[7] Waiting until expert discovery to disclose the documents would require either conducting two separate depositions of certain fact witnesses now (one for the government and the other for the private parties), or recalling those witnesses for further depositions later in the discovery period. Such practices would be a waste of judicial efficiency and economy.

In sum, Amex has not sustained its burden to prove that it has not waived the attorney work product protection for the 2010 documents through their voluntary disclosure to the

---

[7] This is the deposition that has been rescheduled for July 20, 2012.

government.  Accordingly, Amex must produce those documents to the Merchant Plaintiffs and other parties no later than July 18, 2012.

    **SO ORDERED.**

Dated: Brooklyn, New York
       July 13, 2012

                                          /s/ Ramon E. Reyes, Jr.
                                          RAMON E. REYES, JR.
                                          United States Magistrate Judge